Filed 11/26/24  P. v. Lopez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

<table>
<tr><td>THE PEOPLE,</td><td></td></tr>
<tr><td>Plaintiff and Respondent,</td><td>E081569</td></tr>
<tr><td>v.</td><td>(Super. Ct. No. FWV1101402)</td></tr>
<tr><td>MARIA LOPEZ,</td><td>OPINION</td></tr>
<tr><td>Defendant and Appellant.</td><td></td></tr>
</table>

APPEAL from the Superior Court of San Bernardino County.  Katrina West, Judge.  Affirmed.

Sheila O'Connor, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski, and Laura Baggett, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I.

## INTRODUCTION

Defendant and appellant Maria Lopez is a citizen of Mexico who has been living in the United States for over 45 years. In 2013, she pled no contest to attempted second degree murder (Pen. Code,[1] §§ 664/187, subd. (a)), and admitted the personal use of a firearm (§ 12022.5, subd. (a)) allegation. In exchange for her plea, the remaining allegations were dismissed, and defendant was sentenced to a stipulated term of 13 years in state prison.

In 2022, as she was facing deportation proceedings, defendant filed a motion to withdraw her plea and vacate her conviction pursuant to section 1473.7 on the grounds that her conviction was legally invalid and not knowingly and intelligently made because her trial counsel failed to advise her about the immigration consequences of her guilty plea, she did not meaningfully understand the adverse immigration consequences of her plea, and she was prejudiced. The trial court denied the motion.

Defendant appeals, contending her plea counsel provided ineffective assistance of counsel. Specifically, she faults her counsel for failing to advise her of the specific immigration consequences of her plea. She also argues that she did not have a meaningful understanding of the immigration consequences of her plea and that the errors prejudicially effected the outcome. We find no error and affirm the order.

---

[1] All future statutory references are to the Penal Code unless otherwise stated.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

The victim and defendant were married but were separated at the time of the offense. They shared a six-year-old daughter. The victim reported their relationship "was extremely volatile," and that defendant had threatened to kill him in 2009.

On May 23, 2011, as the victim pulled up to his home in his vehicle, he noticed a figure wearing a black hooded sweatshirt and a ski mask pointing a gun at him from outside the vehicle. The victim observed the person pull the trigger several times, but the gun never fired. Panicked, the victim opened his car door, hit the assailant with his car, and ran for help to a nearby residence. When the victim turned around, he saw the assailant flee the scene.

The victim believed defendant was involved and notified law enforcement. Prior to the incident, a witness saw a female parked near her home acting suspiciously while she sat in a vehicle with a company insignia on the doors. The witness later identified defendant in an infield lineup as the person parked near her home right before the attempt on the victim's life.

Officers subsequently contacted defendant and searched her company vehicle, which she had taken rather than her personal vehicle. A search of defendant's company

---

[2] A summary of the factual background is taken from the probation officer's report.

car revealed a gun, taser, ski mask, black or blue beanie, folding knife, disposable vinyl gloves, black duct tape, ammunition, black gloves, and lighter fluid.

Officers also located a man who stated defendant had offered him $800 to "'f—k up'" the victim. The cohort stated that, on an occasion prior to May 23, he arrived at the victim's home with a knife with the intent to surprise the victim and attack him. However, the victim was already inside the home at the time, and the plan was aborted. Defendant denied any involvement in the incident but described how the victim had made her life "full of problems" after she demanded child support. Defendant also reported that there was a current case where her teenage daughter had accused the victim of molesting her and that the case was still pending.

On January 13, 2012, the San Bernardino County District Attorney filed an amended information charging defendant with premeditated and deliberate attempted murder (§§ 664/187 subd. (a); count 1), assault with a firearm (§ 245, subd. (a)(2); count 2), and two counts of conspiracy to commit a crime (§ 182, subd. (a)(1); counts 3 & 4). The amended information further alleged that defendant personally used a firearm in the commission of count the attempted murder (§ 12022.53, subd. (b)).

On August 2, 2013, defendant pled no contest to attempted second degree murder and admitted that she had personally used a firearm. In return, the remaining allegations were dismissed, and defendant was sentenced to a stipulated term of 13 years in prison.

4

On June 7, 2022, this court reversed the trial court's denial of defendant's section 1203.4b petition,[3] and remanded the matter for the trial court to exercise its discretion. (*People v. Lopez* (June 7, 2022, E077749) [nonpub. opn.] (*Lopez I*).)

On July 22, 2022, following the remittitur in *Lopez I*, the trial court granted defendant's section 1203.4b petition, terminated her sentence, and set aside her conviction.

On November 3, 2022, as she was facing deportation proceedings, defendant filed a motion to withdraw her plea pursuant to section 1473.7 on the grounds that her conviction was legally invalid and not knowingly and intelligently made because her plea counsel did not advise her or investigate the immigration consequences of her plea and failed to negotiate a plea bargain with no adverse immigration consequences. Defendant alleged she did not understand the immigration consequences of her plea because (1) she was not advised of such consequences, and (2) even if she had been advised, she would not have understood these consequences based on years of abuse she suffered at the hands of the victim (her ex-husband) and her ex-husband's abuse of her daughter. She also argued that she was prejudiced by her counsel's failure to advise her of the immigration consequences of her plea. She claimed that even if the court did not find her

---

[3] Under Assembly Bill No. 2147, defendants may petition the court to expunge their conviction. Section 1203.4b gives trial courts the discretion to grant such relief to certain defendants, such as defendant, who have successfully participated in the California Conservation Camp Program (fire camp).

former counsel rendered ineffective assistance, she did not meaningfully understand the potential immigration consequences of her plea.

In support of her motion, defendant attached her declaration in which she detailed her ties to the United States: she arrived in this country when she was four years old, both of her daughters are United States citizens, her two grandchildren are citizens as well, and she was currently married to a United States citizen. In this same declaration, defendant claimed she had been a victim of abuse since she was a child, and her older daughter had been molested by her ex-husband—the victim in this case. Defendant claimed she became distraught when she discovered that their daughter was in the custody of her ex-husband just days before her plea. Prior to her plea, she had been in custody for two years and was represented by retained counsel. During those two years, however, defendant claimed her retained counsel never discussed or mentioned immigration consequences of a possible plea. At the time of her plea, defendant was represented by new appointed counsel. Defendant declared that new counsel never discussed with her the immigration consequences of her plea, or the possibility of an immigration-safe resolution. Given her ties to the United States, defendant asserted that she would have never pled in this case had she known it would result in deportation from this country. Following the expungement of her conviction pursuant to section 1203.4b, defendant stated that she had been placed in removal proceedings.

On February 9, 2023, the People filed an opposition to the motion. The People responded that defendant's motion should be denied because counsel provided effective

assistance and advised defendant of the immigration consequences of her plea. In addition, considering defendant had been charged with attempted murder, there was no "immigration safe" plea. Thus, defendant failed to show prejudicial error because there was no possibility of a plea that would not result in defendant's deportation.

Defendant thereafter replied to the People's opposition, arguing she did not meaningfully understand the immigration consequences of her plea and that she had established prejudicial error. Defendant also argued that her declaration was sufficient to show prejudice, her counsel did not inform her she would be deported if she pled guilty, and the immigrations advisements by the trial court and the plea form do not satisfy the advisement requirement.

On April 28, 2023, the trial court held a hearing on the section 1473.7 motion. At that time, defendant and her plea counsel testified. Defendant testified that she obtained a green card in 2007 and was a legal permanent resident of the United States. Her first retained counsel, who had represented her for two years, never discussed any immigration consequences that could result from her plea. She obtained new counsel, Attorney Gary Ablard, who was appointed to represent her, in January 2013. In August 2013, defendant changed her plea to no contest. During the eight months that Ablard represented her, defendant testified that he never spoke to her about the immigration consequences of her plea, and never advised her that she could be deported because of her plea. From the time she was charged in this case to her plea, defendant never

7

consulted an immigration attorney. Defendant testified that at the time she pled guilty, "[i]t was highly important" for her to be reunited with her family as soon as possible.

Defendant acknowledged that she read, initialed, and signed her plea form. She is a fluent English speaker, and can read and write in English. She does not need the aid of a Spanish language interpreter. Defendant claimed that although she initialed the box next to the paragraph which stated, "'I understand that if I am not a citizen of the United States, deportation, exclusion from admission to [the] United States, or denial of naturalization *will* result from a conviction of offenses to which I plead guilty or no contest,'" she never read that paragraph, and her attorney never went over that section with her. She claimed that no one went over the plea form with her, including Ablard. She admitted that the court asked her if she went over the plea form with her attorney and she answered, "'[y]es.'" Defendant also initially claimed that she did not remember the court admonishing her that, if she was not a United States citizen, she could be deported. She believed her possession of a green card gave her "residency" and that being a citizen did not matter. She subsequently admitted that the court stated that if she was not a citizen, she could be deported. She claimed that she was not "considering anything but being away from [her] children" and that she "didn't consider anything but getting home to [her] children." She stated that she first realized there was an immigration issue one week before her release, as she was notified that immigration had placed her on a hold. She again claimed she signed the plea deal to return to her family as fast as she could, considering she had spent two years, eight months in custody, and she never would have

8

agreed to the terms if she knew she was going to be separated from her family. Defendant explained that had she understood she would be deported, she would have fought her case and not signed the plea agreement.

Ablard, defendant's counsel at the time of her plea, testified that he had been a practicing attorney since 1979, and predominately a criminal defense lawyer since the mid-1980's. Ablard recalled representing defendant, but did not have an independent recollection of her case. Ablard described his standard practice when it came to immigration consequences of a plea. His standard practice included first, a determination of the client's citizenship status, and second, if the client was not a United States citizen, Ablard would ask the prosecution to keep any plea offers open, continue the matter to assess the best path forward, and have the client consult an immigration attorney. Ablard was aware that a resident with a green card is not a citizen, and thus he would have asked for more time to consider the options. In a case such as defendant's where attempted murder was charged, Ablard knew there was no immigration-safe plea possible, and therefore, he would have advised the client that he or she would be deported. Ablard would advise the client about the immigration consequences before the hearing on the plea, or at the time of the hearing. Ablard also testified that he reviews the following portions of the plea form with this clients: (1) the declaration on the plea form; (2) the handwritten and preprinted portions; and (3) the paragraph containing the immigration warning. Ablard had no reason to believe he did not advise defendant of the immigration consequences in her case.

9

On cross-examination, Ablard admitted that he represented defendant on a subsequent petition pursuant to section 1203.4, but he did not recall his representation for the attempted murder charge. Ablard also testified that he was unaware that defendant was not a United States citizen until recently, because he had no prior recollection of the case. In his experience, Ablard explained that there were occasions where a client had an immigration status that would adversely affect him or her, but the client does not disclose it to him. Ablard had no independent way to check the immigration status of his clients.

Defense counsel argued that defendant did not meaningfully understand the immigration consequences of her plea, and that resulted in prejudice. Counsel asserted that a trial court's advisal on the record during the plea is insufficient to place a defendant on notice of immigration consequences of his or her plea. Counsel noted that defendant had never been involved in the criminal justice system before this case, and she testified that she never received an immigration advisement from her attorney. Counsel explained that defendant believed she was in the country lawfully, and therefore, she did not understand that her attempted murder conviction would have an immigration consequence of deportation. Counsel further argued that Ablard's practice of advising his clients who are not United States citizens to consult an immigration attorney was insufficient for defendant to understand she could be deported as a result of her plea. Considering her family ties in the United States, counsel argued that defendant would not have accepted the plea bargain had she known she would be deported.

The People responded that defendant lacked credibility since at the time of plea, she informed the court she had read and understood the plea form, yet at the current hearing, she testified she did not read the plea form and had no idea what she was signing. The People argued that defendant either lied when she entered her plea, or lied to the court during the section 1473.7 hearing. The People further observed that defendant is a fluent English speaker. And, while defendant claimed to have only spoken to her attorney once, the People observed that the minute orders indicated Ablard appeared on defendant's matter eight separate times. The People added that defendant did not care about the immigration consequences of her plea because she never consulted an immigration attorney in the two years and three months she was in custody leading up to her plea. The People further noted it was not possible to negotiate an "immigration-safe plea" on a premeditated attempted murder charge, and summarized the evidence, describing the case against defendant as strong. The trial court took the matter under submission and continued the matter.

On May 19, 2023, the trial court requested defense counsel provide documentation that showed removal proceedings were pending.

On June 5, 2023, via a written order, the trial court denied defendant's motion. The court found defendant had not proven prejudicial error for multiple reasons. First, the court found defendant had not shown there had been attorney error, finding Ablard to be credible in his testimony that he correctly advised defendant that she would be deported. The court noted that defendant had neither offered a declaration from her first

11

attorney nor state her first attorney was unavailable to testify. The court relied on the transcript of the plea colloquy, which indicates Ablard spoke with defendant about her case, that he went over the plea form with defendant, and that defendant understood everything on the plea form. The court also pointed out that at the time defendant pled guilty, the trial court had advised defendant she may be deported as an immigration consequence of her plea in open court and defendant had stated that she understood everything on the plea form. The court found defendant had failed to show by a preponderance of evidence that she was not advised of the adverse immigration consequences she faced as a result of her plea. The court found defendant to be credible "when she testified that all she cared about when she pled was returning to her children as quickly as possible."

The court also concluded defendant was not too distraught to understand the adverse immigration advisements because she failed to offer objective supporting evidence of her emotional state and inability to understand any aspect of her plea. Moreover, the court noted that defendant's unsubstantiated claim was contradicted by the record. Defendant had initialed and signed her plea form in the appropriate places, and she seemed under no distress during her colloquy with the court at the change of plea hearing. The court pointed out that defendant had answered in the negative to the plea court's query of whether she was "'under the influence of alcohol or drugs, or anything that would interfere with [her] ability to understand what [she was] doing.'" Defendant also replied in the negative to the court's question of whether anyone had threatened her

12

or used any violence against her to force her to change her plea. In addition, defendant stated "yes," in response to the court's question of whether she understood all the penalties and punishments for her crime, any potential defenses she may have had to the charges and the future consequences of her plea. Defendant also replied "yes" to the court's questions of whether she had enough time to talk with Ablard and whether she was satisfied with the advice he had given her. The court explained, "When [defendant] was asked if she was under the influence of anything that would interfere with her ability to understand what was happening in her case that was a perfect opportunity for her to inform the court she was too distressed to enter the plea, but she did not." The court further noted that defendant's "emotional state did not cause the court to pause, or continue the matter," rather the court found defendant read and understood the plea form, that defendant understood the future consequences of her plea, and that defendant knowingly, intelligently, and voluntarily entered her plea. The court concluded defendant "failed to show she was prejudice because she was too distraught to understand the adverse immigration consequences of her plea."

In addition, the court found that defendant did not objectively prove she mistakenly believed because she had lawful permanent resident status the immigration consequences did not apply to her. The court noted that defendant was a fluent English speaker and appeared to have no issue understanding or communicating in English. The court explained that defendant was 35 years old when she pled guilty, she had been in the United States since she was four years old, had held many white-collar jobs, and had

purchased two houses. The court additionally noted that the plea form's advisal and the court's oral advisal concerning immigration consequences did not provide for an exception for someone with lawful permanent status. The court further concluded that defendant would have entered a plea even if she understood the immigration consequences, observing that although defendant claimed at the section 1473.7 hearing that her first priority was to remain in the country, she also testified that at the time of her plea, she was not considering anything but being away from her children and wanted to get back to them. The court further relied on defendant's failure to prove an immigration-safe plea was available because any crime that carried a sentence of a year or more is an aggravated felony, and an aggravated felony is a deportable offense. The court noted that defendant had "failed to offer any related alternative plea she could have entered that would have carried a sentence of less than [one] year because none existed."

Finally, the court determined that defendant failed to prove by a preponderance of the evidence that she would have rejected the stipulated term of 13 years in prison and gone to trial if she had fully understood the immigration consequences. The court noted that defendant was facing the possibility of a determinate term of 19 years, followed by a life term in state prison. The court detailed the evidence supporting defendant's charges and concluded the People had a strong case against her. The court concluded, "Given the strong evidence against [defendant], the likely conviction if she went to trial, that the plea allowed her to avoid a likely life term with the possibility of parole after 19 years, and her failure to discuss the risks of rejecting the plea, [defendant] failed to prove by a

14

preponderance of the evidence, that she would have rejected the plea if she had fully understood the immigration consequences."  Defendant timely appealed.

III.

DISCUSSION

Defendant argues her motion to vacate her conviction should have been granted because she showed (1) her plea counsel failed to properly advise her of the immigration consequences of her plea, (2) she did not meaningfully understand the immigration consequences of her plea, and (3) she would not have accepted the plea had she properly understood those consequences.  We conclude the court properly denied the motion.

A.  *Section 1473.7 Generally*

Section 1473.7 authorizes a person who is no longer in criminal custody to move to vacate a conviction or sentence where the "conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence."  (§ 1473.7, subd. (a)(1) ; see *People v. Vivar* (2021) 11 Cal.5th 510, 523, (*Vivar*); *People v. Espinoza* (2023) 14 Cal.5th 311, 319; *People v. Coca* (2023) 96 Cal.App.5th 451, 457, 31.)

"Ineffective assistance of counsel that damages a defendant's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a guilty plea . . . is the type of error that entitles the defendant to relief under section 1473.7."  (*People v. Ogunmowo* (2018) 23 Cal.App.5th

15

67, 75.)  To establish ineffective assistance of counsel, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness and the defendant was prejudiced by counsel's deficient performance.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688.)

In 2019, the Legislature amended section 1473.7 to clarify that a "finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel." (§ 1473.7, subd. (a)(1).)  Thus, a person seeking relief pursuant to section 1473.7 need only demonstrate prejudice that he or she would not have entered the plea had he or she known about the immigration consequences.  (*People v. Camacho* (2019) 32 Cal.App.5th 998, 1010-1011.)

"[S]howing prejudicial error under section 1473.7, subdivision (a)(1) means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences. When courts assess whether a petitioner has shown that reasonable probability, they consider the totality of the circumstances.  [Citation.]  Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible."  (*Vivar*, *supra*, 11 Cal.5th at pp. 529-530.)

A defendant seeking to withdraw his plea based on inadequate advisement of immigration consequences must "corroborate such assertions with objective evidence."

(*Vivar*, *supra*, 11 Cal.5th at p. 530, internal quotation marks omitted.) "Objective evidence includes facts provided by declaration, contemporaneous documentation of the defendant's immigration concerns or interactions with counsel, and evidence of the charges the defendant faced." (*People v. Espinoza*, *supra*, 14 Cal.5th at p. 321.) "[N]o specific kind of evidence is a prerequisite to relief," but "[t]he more robust and inclusive a record, the greater the opportunity for effective persuasion and meaningful judicial review." (*Id*. at p. 325.)

The court must grant the motion to vacate the conviction "if the moving party establishes, by a preponderance of the evidence, the existence of any of the grounds for relief specified in subdivision (a)." (§ 1473.7, subd. (e)(1).) In ruling on a section 1473.7 motion, the trial court must also specify the basis for its decision. (§ 1473.7, subd. (e)(4).) An order granting or denying the motion is appealable. (§ 1473.7, subd. (f).)

B. *Standard of Review*

We apply an independent standard of review to rulings on section 1473.7 motions. (*Vivar*, *supra*, 11 Cal.5th at pp. 524-528.) Under independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law. (*Id*. at p. 527.) When courts engage in independent review, they should be mindful that independent review is not the equivalent of de novo review. An appellate court may not simply second-guess factual findings that are based on the trial court's own observations. (*Ibid*.) Factual determinations that are based on the credibility of witnesses the trial court heard and observed are entitled to particular deference, even though courts reviewing

17

such claims generally may reach a different conclusion from the trial court on an independent examination of the evidence even where the evidence is conflicting. (*Ibid*.) In section 1473.7 motion proceedings, appellate courts should similarly give particular deference to factual findings based on the trial court's personal observations of witnesses. (*Vivar*, *supra*, at pp. 527-528.) "Ultimately it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7." (*Id*. at p. 528; see *Espinoza*, *supra*, 14 Cal.5th at pp. 319-320; *People v. Coca*, *supra*, 96 Cal.App.5th at p. 458; *People v. Curiel* (2023) 92 Cal.App.5th 1160, 1173 (*Curiel*).)

C. *Analysis*

Defendant claims her counsel failed to inform her that, as a result of her plea to attempted second degree murder, the immigration consequences were mandatory deportation and that her counsel should have known her status as a legal permanent resident would not exempt her from deportation. She also contends that her counsel's prejudicial failure to properly advise her on the consequences of pleading guilty added to her inability to meaningfully understand the effects of her actions. Defendant claims she was prejudiced since she would not have pled guilty if she had understood she was subject to mandatory deportation and would be unable to return to the United States, thereby separating her from her family, job, and country.

Defendant failed to meet her burden of establishing by a preponderance of the evidence any prejudicial error on plea counsel's part that damaged her ability to understand, defend against, or knowingly accept the immigration consequences of her

18

plea.  (§ 1473.7, subds. (a)(1), (e)(1).)  We note the ease with which a defendant may claim his counsel erred.  (See *In re Alvernaz* (1992) 2 Cal.4th 924, 938.)  However, "[a]n allegation that trial counsel failed to properly advise a defendant is meaningless unless there is objective corroborating evidence supporting appellant's claimed failures." (*People v. Cruz-Lopez* (2018) 27 Cal.App.5th 212, 223-224.)  Thus, defendant's claims require "corroboration and objective evidence because a declaration by defendant is suspect by itself." (*Id*. at p. 224.)  "Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his [or her] attorney's deficiencies.  Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." (*Lee v. United States* (2017) --- U.S. - -- [137 S.Ct. 1958, 1967]; see *People v. Mejia* (2019) 36 Cal.App.5th 859, 872 ["[i]n a postconviction setting, courts should not simply accept a defendant's statement of regret regarding the plea, courts should also 'look to contemporaneous evidence to substantiate a defendant's expressed preferences.'"].)

Defendant has presented no such objective, corroborating evidence here.  The only relevant evidence she offers is her self-serving declaration and testimony concerning her plea.[4]  Generally, self-serving declarations and testimonies lack trustworthiness.  (*People v. Duarte* (2000) 24 Cal.4th 603, 611.)  In other words, we are not bound to give full credence to the statements in defendant's declaration and testimony because of her

---

[4] Defendant also attached a declaration from her older daughter regarding the sexual abuse allegation against the victim.  The declaration makes no reference concerning defendant's plea of guilty.

obvious interest in the outcome of the proceeding. (See *People v. Beck* (1961) 188 Cal.App.2d 549, 553.) Moreover, the trial court found Ablard's testimony credible and defendant's testimony not credible concerning the immigration advisal given by Ablard.

Furthermore, we find defendant's statements in her declaration that she pled guilty not knowing she would be deported not credible in light of the signed plea agreement and the court's own taking of her plea. Defendant initialed the box next to the statement in the plea agreement stating: "I understand that if I am not a citizen of the United States, deportation, exclusion from the admission to the United States, or denial of naturalization *will* result from a conviction of the offense(s) to which I plead guilty/no contest." Defendant initialed the boxes verifying that her attorney explained everything in the agreement to her, and she fully understood everything. She also initialed the boxes verifying that she understood she had the right to a trial and that she had sufficient time to consult with her attorney. The record also shows that when the court was taking her guilty plea, it specifically told defendant that her conviction may result in deportation. The court said, "If you are not a citizen, you are hereby advised that conviction of the offense for which you are pleading may have the consequences of deportation, exclusion from admission to the United States or denial of naturalization pursuant to the laws of the United States; do you understand all of that?" Defendant responded, "Yes, sir."

Although the court stated "may," the court confirmed with plea counsel that he went over the form with defendant, and defendant understood everything on it. The court found that defendant read and understood the form, understood the charge to which she

20

was pleading and the consequences for the charge, and was freely and knowingly entering the plea. Indeed, an examination of the entire colloquy between defendant and the court demonstrates that defendant meaningfully understood the immigration consequences of her plea. The plea form contradicts defendant's declaration and testimony that she did not understand the immigration consequences of her guilty plea. Defendant grew up in the United States since she was four years old and attended her local schools and colleges. She was fluent in English and did not require a translator or interpreter at any point during the proceedings.

We recognize that generic form statements and warnings on plea forms are not necessarily dispositive. (See *People v. Patterson* (2017) 2 Cal.5th 885, 895-897; *People v. Lopez* (2022) 83 Cal.App.5th 698, 716.) "Even where the form says that the defendant 'will' be deported, it does not substitute for the advice of counsel, and it is not a categorical bar to relief." (*People v. Manzanilla* (2022) 80 Cal.App.5th 891, 906; see also *Curiel*, *supra*, 92 Cal.App.5th at p. 1175.) But in those cases, other objective evidence—such as attorney notes, oral testimony, or affirmative actions taken by defendants after their convictions—substantiated the defendant's version of events. (See *People v. Manzanilla*, *supra*, at p. 910 [rejecting claim that a defendant's initials and signature on a plea form conclusively showed he subjectively understood he would be deported and stating that this "has been rejected by numerous courts where there is contemporaneous evidence to the contrary . . . ."].)

In *Curiel*, a case heavily relied upon by defendant, for example, the Court of Appeal found corroborating evidence sufficient to overcome a defendant's signed acknowledgement that her plea would mandate deportation. (*Curiel*, *supra*, 92 Cal.App.5th at pp. 1177-1178.) There, the defendant had signed a plea form stating, "I understand that if I am not a citizen of the United States, I must expect my plea of guilty or no contest will result in my deportation . . . ." (*Id.* at p. 1165.) The defendant's section 1473.7 motion relied heavily on her own declaration to support her claim that she did not properly understand those immigration consequences. (*Curiel*, *supra*, at p. 1167.) She alleged that she had relied on her defense counsel's representations that if she avoided jail time, she could avoid deportation. (*Ibid.*)

However, other objective evidence corroborated the defendant's statements. (*Curiel*, *supra*, 92 Cal.App.5th at pp. 1177-1178.) The trial court held an evidentiary hearing on her petition, at which both the defendant and her original defense counsel testified. (*Id.* at pp. 1168-1171, 1176-1177.) On appeal, the court found that the testimony of the defendant's defense counsel "corroborated the statements in Curiel's declaration" and confirmed that the advice she received regarding the immigration consequences of her plea "was inadequate and incomplete." (*Id.* at p. 1177)

Here, defendant put forth no comparable evidence corroborating the claims made in her declaration. The plea form, the record in open court of defendant's plea, and Ablard's testimony, which the trial court found credible, all demonstrate that she did meaningfully understand the immigration consequences of her plea.

22

Defendant claims the court should have relied on her post-plea conduct, which showed her desire to return to her children, to determine whether she meaningfully understood the adverse immigration consequences. Her post-plea conduct does not aide defendant as her desire to plead guilty was the same: to return to her children as soon as possible. At the section 1473.7 hearing, defendant repeatedly testified that all she cared about when she pled was returning to her children as quickly as possible. This does not demonstrate she did not understand the adverse immigration consequences, rather it shows her motivation for pleading guilty. Defendant was facing a determinate term of 19 years, plus an indeterminate term of life. By pleading guilty, she received 13 years, thereby being free from custody much sooner.

Defendant also contends that she was too distraught due to the victim's abuse of her daughter, their daughter returning to the victim's care before she pled guilty, and her own abuse as a child to meaningfully understand the adverse immigration consequences. However, this claim is belied by the record. Moreover, as the trial court found, defendant has failed to offer objective supporting evidence of her emotional state and inability to understand the consequences of her plea or the plea in general. Defendant was not so distraught as to request a continuance. She was able to initial and sign the plea form in the appropriate places. She did not appear in distress when appropriately and respectfully responding to the court's questions. She did not provide a family law order showing a change in custody of her daughter. When the court inquired whether she was under the influence of drugs or alcohol or anything that would interfere with her ability to

understand, defendant responded, "No. Sir."  At this time, defendant could have alerted the court that she was too distraught to enter the plea, but she did not.  Defendant has failed to show she did not meaningfully understand the adverse immigration consequences of her plea because she was too distraught.

Even assuming her plea counsel did err in her representation, defendant has failed to establish that she was prejudiced.  She argues that she would not have taken the plea deal if she had known the consequence of eventually being deported because of her two daughters, two grandchildren, her family and friends, her home, and her life in the United States.  Defendant's declaration contains the only direct evidence presented as to whether she would have taken the plea had she been aware of the immigration consequences.  However, "'a defendant's self-serving statement—after trial, conviction, and sentence—that with competent advice he or she *would* have accepted [or rejected] a proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated independently by objective evidence.'"  (*People v. Bravo* (2020) 58 Cal.App.5th 1161, 1171, overruled in part on other grounds, as stated in *Vivar*, *supra*, 11 Cal.5th at p. 526.)  We note defendant did not state in her declaration that she told her plea counsel her priority was to remain in the United States with her family and life, in order for her counsel to try to mitigate the consequences of the plea.  Defendant did state in her declaration that she would not have accepted the plea deal if she knew she was going to be deported, and she "would have asked [her] attorney to defend the case in every way possible," "would have asked [her] attorney to attempt to

24

have the charge changed," "would have even offered to spend time in custody," or "would have taken the case to trial." First, defendant did know that she would be deported because her counsel, the plea form, and the court expressly told her so. Second, defendant's statement lacks credibility. Defendant was charged with premeditated and deliberate attempted murder (§§ 664/187 subd. (a)), assault with a firearm (§ 245, subd. (a)(2)), and two counts of conspiracy to commit a crime (§ 182, subd. (a)(1)). It was also alleged that defendant personally used a firearm in the commission of the attempted murder (§ 12022.53, subd. (b)). Thus, as previously noted, she would have been facing a maximum sentence of life. She would not have been eligible for parole for 19 years. The evidence against her was strong. As the trial court noted, "[t]here was evidence suggesting that over the course of 3 weeks [defendant] hired someone to physically harm [the victim], she set [the victim] up to be arrested, hired someone to kill him and then tried to kill [the victim] herself." Pursuant to the plea agreement, defendant pled guilty to attempted second degree murder and admitted the firearm allegation, in exchange for a term of only 13 years in state prison and the dismissal of the remaining counts and allegations.

Further, based on the charges and the strong evidence against defendant, an immigration-safe plea was not possible. Any crime that carries a possible sentence of one year or more is an aggravated felony. (8 U.S.C. § 1227, subd. (a)(2)(A)(iii).) All of the crimes charged against defendant are deportable offenses because they are aggravated felonies. As concluded by the trial court, defendant has not offered any alternative plea

"she could have entered that would have carried a sentence of less than [one] year because none exist."

"Additionally, neither in the opening brief nor in h[er] declaration does defendant discuss how the costs of rejecting the plea—the potential sentence [s]he faced, h[er] ability or lack thereof to make alternative arrangements for h[er] family, and so on— would have factored into h[is] analysis. [Sh]e simply makes a conclusory claim that [s]he would have taken the alternative route without consideration as to the opportunity cost of doing so. Yet, to determine the reasonable probability that defendant would have rejected a plea offer, a court would need to consider not only defendant's ties to the United States and h[er] family situation, but to consider them in light of the consequences of h[er] rejecting the plea and proceeding to trial. Without evidence of the probability of an alternate disposition, and without evidence of both the negative and positive consequences of the plea and how the defendant would have weighed them, a defendant cannot support a showing that it is reasonably probable that, if properly advised, [s]he would have rejected the . . . plea offer 'in the hope or expectation that he or she might thereby negotiate a different bargain or, failing in that, go to trial.'" (*People v. Bravo* (2021) 69 Cal.App.5th 1063, 1076-1077, quoting *People v. Martinez* (2013) 57 Cal.4th 555, 567.)

Moreover, given the nature of the charges and the multiple attempts to physically harm or kill the victim, it was extremely unlikely the People would have accepted an

26

immigration-safe plea. As the trial court stated, "[a]fter all, [defendant's codefendant] was sentenced to [four] years in state prison for his less egregious actions."

Under these circumstances, although it is possible, it is not likely she would have risked going to trial, being convicted of all counts, and facing a life sentence as well as the same immigration consequences.

We conclude that defendant failed to meet her burden of establishing by a preponderance of the evidence that her plea counsel rendered ineffective assistance, or that she did not understand the immigration consequences of the plea, that she would not have taken the plea deal if she had known the adverse consequences of her plea. Because defendant failed to meet her burden of proof, the trial court properly denied the section 1473.7 motion.

IV.

DISPOSITION

The order denying defendant's section 1473.7 motion is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:


RAMIREZ
P. J.

MILLER
J.

27